**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**BRYAN KEITH RICHARDSON,**
    **Petitioner,**

**v.**                                                    **Civil Action No. 3:14-cv-129**

**CHARLES WILLIAMS,**
**Warden of FCI Gilmer,**[1]
    **Respondent.**

## REPORT AND RECOMMENDATION

On December 1, 2014, the *pro se* petitioner, Bryan Keith Richardson ("Petitioner"), an inmate now incarcerated at FCI Allentown in White Deer, Pennsylvania,[2] filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241. (Docket No. 1.) On December 23, 2014, the undersigned ordered Respondent to show cause as to why the writ should not be granted. (Docket No. 11.) After receiving an extension of time, Respondent filed a "Response to Order to Show Cause and Motion to Dismiss Petition" and memorandum in support on January 21, 2015. (Docket Nos. 14 and 15.) On January 22, 2015, the undersigned issued notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), informing Petitioner of his right to file material responsive to Defendant's motion to dismiss. (Docket No. 17.) After receiving an extension of time, Petitioner filed his response on February 23, 2015. (Docket No. 22.)

On March 19, 2015, the undersigned entered an Order directing Respondent to file a

---

[1] Although the docket sheet lists Russell A. Perdue as the Warden of FCI Gilmer, Charles Williams is now the Warden. (Docket No. 15-1 at 1.) Accordingly, the undersigned has substituted Warden Williams as the proper respondent in this action. See 28 U.S.C. § 2241; Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004) (the only proper respondent for a § 2241 petition is the petitioner's immediate custodian); Fed. R. Civ. P. 25(d).

[2] At the time Petitioner filed his Petition, he was incarcerated at FCI Gilmer in Glenville, West Virginia. Accordingly, the Court has proper jurisdiction over this matter. See Rumsfeld v. Padilla, 542 U.S. 426 (2004); United States v. Miller, 871 F.2d 488, 490 n.3 (4th Cir. 1989).

supplemental response "which includes the Table listings for Code 297 and 397, and addresses with particularity the inconsistencies and issues raised in the body of this Order and the Petitioner's Traverse." (Docket No. 25 at 3.) Respondent filed his supplemental response on April 2, 2015. (Docket No. 31.) Petitioner filed a reply to that response on April 17, 2015. (Docket No. 34.) Respondent filed an addendum to the supplemental response on April 23, 2015. (Docket No. 36.)

## I. Facts

Petitioner is serving a 120-month sentence imposed by the Northern District of California on February 12, 2010, for bank robbery. (Docket No. 15-1 at 1.) His projected release date, with consideration for good conduct time, is February 20, 2018. (Id.)

On July 3, 2014, while at FCI Gilmer, Petitioner received an incident report for violating Code 297, Use of Telephone for Abuses Other than Criminal Activity. (Docket No. 15-2 at 2.) The incident report indicated that on that day, a Special Investigative Service ("SIS") technician was monitoring recorded inmate phone calls. (Id.) The technician monitored a call made on May 21, 2014, by inmate Ruiz to a particular phone number, and noticed that the inmate speaking on the phone neither spoke Spanish nor spoke with a Hispanic accent. (Id.) The technician determined that the phone number had been listed on three (3) different inmate phone lists. (Id.) Petitioner had added the number to his phone list as "Parent" on November 19, 2013, and had deactivated the number on May 21, 2014. (Id.) Inmate Ruiz had added the number as "Friend" to his phone list on May 21, 2014, and deactivated it on July 2, 2014. (Id.) At many times throughout the call, the inmate referred to the female on the phone as "Mom." (Id.) At the 5:37 minute mark, the female tells the inmate that she knows when his birthday is, and the birth date she gave was Petitioner's birth date. (Id.) At the 6:09 minute mark, a male got on the phone and said, "Hello, Keith, how are you?"

2

(Id.) The SIS technician concluded that Petitioner was using inmate Ruiz's Personal Access Code ("PAC") number to "place calls to this number due to the fact that he lost his phone privileges for an unrelated infraction." (Id.)

Petitioner received a copy of the Incident Report on July 3, 2014, at 3:07 p.m. (Id.) The investigator, Lieutenant J. Hurd, Sr., advised Petitioner of his rights that same day. (Id. at 3.) Petitioner told Lieutenant Hurd that the action was "retaliation by staff." (Id.) Lieutenant Hurd noted that based upon the evidence and the report, Petitioner had been properly charged. (Id.)

A UDC hearing was held on July 4, 2014. (Id. at 2.) During the UDC hearing, Petitioner stated that he was "Not Guilty." (Id.) The incident was thereafter referred to the Disciplinary Hearing Officer ("DHO") for further proceedings. (Id.) The UDC recommended appropriate loss of good conduct time and privileges. (Id.)

On July 4, 2014, Petitioner was provided a Notice of Disciplinary Hearing Before the DHO form. (Id. at 5.) Petitioner requested a staff representative, Mr. McAdams, but did not wish to call any witnesses. (Id.) Petitioner was also provided a form advising him of his rights at the DHO hearing. (Id. at 7.) Mr. McAdams, Unit Manager, agreed to act as Petitioner's staff representative on July 7, 2014. (Id. at 9.)

Petitioner's DHO hearing was conducted on July 24, 2014. (Id. at 11.) During the hearing, Petitioner stated that the incident report was true, but that he was not guilty of violating Code 297. (Id.) He stated "the policy allows for a lesser severe charge of 397 and 497 and he believes it is a 497." (Id.) Petitioner noted that inmate Ruiz placed the call, and admitted that he did talk to his mother on this phone call. (Id.) However, Petitioner argued that he "did not circumvent the monitoring procedures." (Id.)

3

Mr. McAdams appeared at the DHO hearing with Petitioner. Both advised that they were prepared to proceed. (Id.) Mr. McAdams stated that he had not listened to the phone call because Petitioner admitted that he spoke to his parents and the phone and was "just disputing the coding of the incident report." (Id.)

DHO Debbie Lohr found that Petitioner committed the prohibited act of Code 297. (Id. at 12.) In so finding, she relied upon the written Incident Report and Petitioner's partial admission that the report was true as written. (Id. at 12, 13.) The DHO discussed "at length" the differences between Code 297 and Code 397 and gave Petitioner examples of each. (Id. at 13.) She also informed Petitioner that Code 497 no longer exists. (Id.) The DHO found, based upon the "greater weight of the evidence," that Petitioner had violated Code 297, Use of Telephone for Abuses Other than Criminal Activities. (Id.)

The DHO imposed sanctions, including disallowance of twenty-seven (27) days of good conduct time and loss of phone privileges for six (6) months, with three (3) months suspended pending 180 days of clear conduct. (Id.) The sanctions were imposed because "[t]he use of a telephone while incarcerated is a privilege, not a right." (Id.) She noted that circumventing the telephone monitoring procedures, or abusing the telephone system, would not be permitted. (Id.) The DHO stated that the BOP "has an obligation to the public at large, to ensure that inmates are not using the telephone to contact unauthorized persons, for criminal activity, drug transactions, conducting business or to threaten or harass members of the public." (Id.) The DHO explained that the sanctions were imposed to hold Petitioner accountable for his behavior and to deter him from engaging in similar behavior in the future. (Id.)

Petitioner was advised of his appeal rights. (Id.) He was provided a copy of the DHO report

4

on August 7, 2014. (Id. at 14.) Petitioner appealed the disciplinary action, fully exhausting his administrative remedies with the BOP. (Docket No. 36-1 at 1-3.)

## II    Contentions of the Parties

A.   **Petitioner's § 2241 Petition**

In his Petition, Petitioner raises the following grounds for relief:

1. "Violation of my disciplinary procedural due process rights;"

2. "The wrong prohibited act code was applied;"

3. "No progressive disciplinary [sic] was applied or used by the incident report writer nor by the DHO hearing officer–as BOP suggests must be used;" and

4. DHO Debbie Lohr "did use racial discrimination to factor in, or otherwise determine, how much disallowance of good conduct time credit that she would sanction against an inmate."

(Docket No. 1 at 5-6.) As relief, Petitioner seeks to have his disciplinary charge reduced by changing the prohibited act code to the lesser charge and reducing the disallowance of good conduct time from twenty-seven (27) days to fourteen (14) days. (Id. at 8.) He also seeks injunctive relief against FCI Gilmer officials and DHO officers to prevent them from "applying discrimination" in discipline hearings. (Id.) Finally, Plaintiff requests that the Court order the prison to provide him access to the law library at least three (3) times per week because he claims officials at FCI Gilmer have denied him total access.[3] (Id.)

---

[3] After filing his Petition, Plaintiff was transferred to FCI Allenwood in White Deer, Pennsylvania. A prisoner's transfer to another facility renders a claim for injunctive and declaratory relief moot. See, e.g., Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Magee v. Waters, 810 F.2d at 451, 452 (4th Cir. 1987); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986). Furthermore, Petitioner's request regarding access to the law library is essentially a denial of access to the courts claim concerning his conditions of confinement, and as such is not properly before this Court. See Preiser v. Rodriguez, 411 U.S. 475, 488 (1973) (habeas is the proper remedy for attacking fact or length of confinement); Hawkins v. Perdue, No. 1:13CV214, 2014 WL 1962216, at *2 (N.D. W. Va. May 15, 2014) (holding that "challenges to the conditions

5

B.  **Respondent's Memorandum**

Respondent asserts that Petitioner's Petition should be dismissed for the following reasons:

1. Petitioner received the rights afforded pursuant to Wolff;

2. Petitioner's right to a staff representative was not violated;

3. The sanctions imposed by the DHO were within the parameters of the BOP's disciplinary regulations; and

4. Petitioner's allegations of equal protection violations are without support.

(Docket No. 15 at 8-15.)

C.  **Petitioner's Response**

In his response, Petitioner again argues that he should have been charged with a violation of Code 397 rather than Code 297. Petitioner also alleges that BOP policy requires that progressive disciplinary measures be applied and that for Code 297 to be applied, his specific conduct would have to be repetitive. He also argues that his staff representative did not fulfill his responsibilities. Finally, Petitioner attaches information that purports to demonstrate that African-American inmates receive more severe punishment than white and Hispanic inmates. (Docket No. 22.)

D.  **Respondent's Supplemental Response**

In his supplemental response, Respondent asserts that Petitioner's Petition should be dismissed for the following reasons:

1. Petitioner's right to a staff representative was not violated;

2. Progressive discipline is not required;

3. Petitioner's conduct violated Code 297, and the sanctions imposed were within the parameters of the BOP's disciplinary regulations; and

---

of his confinement are not cognizable under § 2241, but instead must be pursued through a Bivens action or a claim under the APA").

    4.      Petitioner has failed to show that the DHO discriminated based upon race.

(Docket No. 31 at 1-10.)

### E.    Petitioner's Reply to the Supplemental Response

In his reply, Petitioner reiterates the arguments made in his response. (Docket No. 34.)

## III.    Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1999)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id).

(citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable," id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## IV. Analysis

*A.  Due Process Rights*

As noted above, Petitioner claims that his procedural due process rights were violated. The Supreme Court has held that when prison disciplinary proceedings potentially involve the loss of good time credits, the rights afforded to inmates include: (1) written notice of the violations at least twenty-four (24) hours before the hearing; (2) disclosure of evidence against the prisoner; (3) the right to call witnesses and present documentary evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (4) a neutral and detached hearing body; and (5) a written statement by the fact-finders as to evidence relied upon and reasons for disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 559-66 (1974); see also Morrissey v. Brewer, 408 U.S. 471, 489 (1972); Segarra v. McDade, 706 F.2d 1301, 1304 (4th Cir. 1983). Furthermore, a decision to revoke good time credits must be supported by "some evidence" to

comport with the requirements of due process. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985).

Petitioner received a copy of the Incident Report on July 3, 2014, and the DHO hearing was not held until July 24, 2014. (Docket No. 15-2 at 2, 11.) Accordingly, Petitioner received written notice of the charge more than twenty-four (24) hours before the hearing. The Incident Report also contained the evidence against Petitioner. During the DHO hearing, Petitioner was provided the opportunity to make a statement on his own behalf. (Id. at 11.) Petitioner admitted that the report was true, but argued that he was not guilty of a Code 297 violation. (Id.) Petitioner received assistance from a staff representative, Mr. McAdams, and both Petitioner and Mr. McAdams indicated that they were prepared to proceed at the time of the hearing. (Id.) Nothing in the record suggests that DHO Lohr was not neutral and detached. Furthermore, DHO Lohr issued a written report documenting the specific evidence she relied upon to find that Petitioner had committed a Code 297 violation. (Id. at 12-13.) Her report also contained the action taken and the reasons for such action. (Id. at 13.) It is clear that the Wolff requirements were satisfied, and that the DHO's decision was supported by "some evidence" as required by Hill. Accordingly, Petitioner's claim that his procedural due process rights were violated should be dismissed.

### B. *Right to a Staff Representative*

Petitioner also alleges that his right to a staff representative was violated, asserting that Mr. McAdams did not have adequate time to prepare for or investigate the disciplinary issues prior to the DHO hearing. (Docket No. 1 at 5.) In his response, Petitioner asserts that Mr. McAdams did not meet with him prior to the hearing, did not help him prepare a defense, and did not perform the "assigned duties" listed on the form Mr. McAdams signed when he agreed to serve as the staff

9

representative. (Docket No. 22 at 3-4.)

There is no general constitutional right for an inmate to have a staff representative in prison disciplinary proceedings. See Hudson v. Hedgepeth, 92 F.3d 748, 751 (8th Cir. 1996). Due process requires that an inmate be provided with a staff representative only "'[w]here an illiterate inmates is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and preserve the evidence necessary for an adequate comprehension of the case.'" Id. (quoting Wolff, 418 U.S. at 570).

Two cases are instructive to this matter. In Payne v. Craig, No. 5:08-cv-00989, 2011 WL 4021320 (S. D. W. Va. Sept. 9, 2011), an inmate challenging the loss of good conduct time alleged that he received ineffective assistance from his staff representative. Id. at *2. The inmate asserted that the staff representative "failed to present a meaningful defense and assist with obtaining documentary evidence," and that he "refused to conduct interviews of witnesses or request an extension of time to do so." Id. He also claimed that the representative had "only conferred with him five minutes prior to the hearing and had no valid explanation as to why he failed to conduct interviews with his requested witnesses." Id. at *3. United States District Judge Irene Berger held that the inmate's "due process rights were not violated by the quality of his representation since he d[id] not have a constitutional right to assistance of counsel during the disciplinary processes." Id. at *4 (alteration in original). In so finding, Judge Berger noted that the inmate's case did not involve illiteracy or complex issues. Id.

In Von Kahl v. Brennan, 855 F. Supp. 1412 (M.D. Pa. 1994), a federal inmate claimed that he was denied due process during his disciplinary hearing because, *inter alia*, he received ineffective assistance from his staff representative. Id. at 1416. The Court determined that the representative

was only obligated to talk to witnesses whom the inmate wished to call, and that the inmate had already indicated that he did not want any witnesses to appear. Id. at 1426. While the "one admitted breach was [the representative's] failure to meet with [the inmate] prior to his hearing," the Court found that "the alleged prejudice . . . from this breach is simply too speculative to merit relief." Id. at 1427. There was no evidence that witnesses would have bolstered the case, nor was there any evidence that the representative could have "unearthed evidence that Petitioner was set up." Id.

Here, Mr. McAdams agreed to be Petitioner's staff representative on July 7, 2014. (Docket No. 15-2 at 9.) The form that he signed stated in pertinent part:

1. You are to assist the inmate in presenting whatever information the inmate wants to present and in preparing a defense. This will require, in every case, consultations with the inmate, and familiarity with the Inmate Discipline Program Statement.

2. You are to speak to witnesses who might furnish evidence on behalf of the inmate, if the inmate indicates there are such witnesses whom the inmate wishes to have called. You may question witnesses requested by the inmate who are called before the DHO.

3. You should become familiar with all reports relative to the charge against the inmate. . . .

4. You should present any evidence favorable to the inmate's defense.

5. You should present information which may assist the DHO and which may obtain a lesser sanction for the inmate. . . .

6. You are to help an inmate understand the charges and the potential consequences.

(Id.)

Mr. McAdams met with Petitioner "in advance of his hearing." (Docket No. 31-1 at 1.) During that conversation, Petitioner explained "in fairly elaborate detail why he chose to break the institution rules and use the phone despite being on phone restriction." (Id.) Petitioner told Mr.

11

McAdams that his parents were elderly, that his father had health issues, and that he was "worried 'he would never see his father alive again.'" (Id.) Petitioner "fully admitted he violated the rules of the facility but attempted to justify it based on the fact his parents were elderly." (Id.) Mr. McAdams explained that it appeared clear that Petitioner was in the wrong, and Petitioner agreed. (Id.) Mr. McAdams told Petitioner that he would "definitely" attend the hearing and speak up and intervene if he observed any policy or procedure violations. (Id. at 2.)

Mr. McAdams arrived early on the day of the hearing and "talked briefly" with Petitioner. (Id.) Petitioner said, "'I'm just gonna tell the truth and ask for leniency.'" (Id.) Mr. McAdams agreed and told Petitioner that was a good approach. (Id.) Mr. McAdams recalled that Petitioner did just that during the hearing. (Id.) He admitted to making the call, told the DHO that his parents were elderly and he was concerned about them, and said he decided to break the rules to hear their voices. (Id.) After the hearing, Petitioner thanked Mr. McAdams for his support. (Id.)

As an initial matter, nothing in the record suggests that Petitioner is illiterate or could not adequately comprehend the disciplinary proceedings against him. Petitioner drafted an appeal of his DHO hearing, and also drafted a Complaint and response in this matter. His presentation of his claims demonstrates his literacy and comprehension. Furthermore, unlike in Von Kahl, Mr. McAdams met with Petitioner prior to the hearing. He appeared at the hearing with Petitioner, and both he and Petitioner advised the DHO that they were ready to proceed. (Docket No. 15 at 11.) Mr. McAdams told the DHO that he did not listen to the phone call prior to the hearing. (Id.) He stated that Petitioner "admits he spoke to his parents, he is just disputing the coding of the incident report." (Id.) There was no reason for Mr. McAdams to listen to the phone call because Petitioner admitted the conduct. Petitioner did not request any witnesses during the hearing, so there were no witnesses

12

for Mr. McAdams to talk to. (Id.) Furthermore, the written summary by the DHO does not contain any objection made by Petitioner to his representation by Mr. McAdams.

In sum, Plaintiff's claim that Mr. McAdams did not assist him in any way is belied by the record. Petitioner admitted to the conduct, and his only challenge was based upon his belief that he should have been charged with a violation of Code 397 rather than Code 297. Petitioner does not indicate what evidence he wished Mr. McAdams to present. Furthermore, Petitioner should have voiced any concerns regarding his representation at the DHO hearing. Petitioner simply has not shown any prejudice resulting from any alleged error or failure on the part of Mr. McAdams. See Von Kahl, 855 F. Supp. at 1413, 1427. Accordingly, Petitioner's right to a staff representative was not violated, this claim should also be dismissed.

C.  *Petitioner's Challenge to the Code Violation and Sanctions*

Petitioner also asserts that the wrong Code violation was applied. He believes he should have been charged with a violation of Code 397, not Code 297. (Docket No. 1 at 6.) He requests that the prohibited act code be changed to Code 397 and that his disallowance of good time credit be reduced from twenty-seven (27) days to fourteen (14) days. (Id. at 8.)

Code 297 is for "Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." (Docket No. 31-3 at 48.) Code 397 is for "Use of the telephone for abuses other than illegal activity which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a Moderate category prohibited act." (Id. at 52.) Sanctions available for a violation of Code 297 include: (1) a recommendation for parole date rescission or retardation; (2) forfeiture and/r

13

withholding of "earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less," and/or termination or disallowance of extra good time; (3) disallowance of between 25% and 50% (14-27 days) of good conduct time credit available for the year; (4) up to six (6) months of disciplinary segregation; (5) monetary restitution; (6) a fine; (7) loss of privileges; (8) change of housing; (9) removal from program and/or group activity; (10) loss of job; (11) impounding of personal property; (12) confiscation of contraband; (13) restriction to quarters; and (14) extra duty. (Id. at 49.)

Here, the DHO noted in the written report that "[s]haring PAC numbers is strictly prohibited conduct as it circumvents telephone monitoring procedures." (Docket No. 15-2 at 12.) Petitioner admitted the conduct, but argued that he should have been charged with a Code 397 violation. (Id. at 13.) However, the DHO found that Petitioner had not presented any evidence to convince her that his conduct did not circumvent telephone monitoring procedures. Specifically, she stated:

> Admittedly you spoke to your mother during the telephone call initiated on the PAC number of inmate Ruiz which circumvents the monitoring of the call. The DHO explained that any conduct such as three way calling, passing messages over the telephone, or sharing a PAC number by talking on another inmate's telephone call violates Code 297 of the Discipline policy.

(Id.) The DHO further wrote that "[i]t is an important part of the institution's security that inmates be allowed to contact those persons authorized," and that the BOP had an obligation to "ensure that inmates are not using the telephone to contact unauthorized persons, for criminal activity, drug transactions, conducting business or to threaten or harass members of the public." (Id.)

This Court has previously upheld a DHO's finding that a violation of Code 297 occurred for the same conduct at issue here. See Mehta v. O'Brien, No. 1:10-cv-200, 2011 WL 1790440, at *5 (N.D. W. Va. Mar. 29, 2011). At least one other court has held the same. Saeed v. Pugh, No. 4:14-

14

cv-0871, 2014 WL 4966357, at *2 (N.D. Ohio Oct. 3, 2014) (upholding the application of the more severe sanction because the inmate's conduct, three-way calling, "circumvented the staff's ability to monitor his telephone use in violation of Offense Code 297"). Furthermore, this Court has previously considered a similar argument, in a case where an inmate asserted that he should have been charged under Code 397 for three-way calling, rather than Code 297. See Morris v. Fransic, No. 3:06-cv-26, 2007 WL 2327111, at *1 (N.D. W. Va. Aug. 10, 2007). United States District Judge John Preston Bailey found that "the Bureau of Prisons uniformly applied its discretion in classifying the petitioner's conduct as a violation of Code 297." Id. Judge Bailey noted that certain behaviors are covered by both Code 297 and Code 397, and, therefore, "the reporting officer exercises discretion in determining which code to assign to a given violation." Id.

Petitioner also appears to assert a claim that the sanctions imposed–particularly the disallowance of twenty-seven (27) days of good conduct time–were too extreme. However, this Court has previously found that an similar claim is without merit. See Valenteen v. Driver, No. 1:08-cv-89, 2009 WL 304835, at *3 (N.D. W. Va. Feb. 6, 2009). United States District Judge Irene M. Keeley noted that the BOP has "the authority to discipline prisoners" pursuant to statute, and that the sanctions imposed on the petitioner fell "within the sanctions authorized . . . and this Court will not disturb the correct and orderly operation of the BOP." Id. Other courts have also found that an inmate is not entitled to relief on a claim that sanctions were too severe as long as the sanctions imposed were within the limits set in the BOP's disciplinary regulations. See Sanchez v. Martinez, No. 1:cv-09-01350, 2009 WL 3731752, at *4-5 (M.D. Pa. Nov. 6, 2009) (also noting that the forfeiture of good conduct time, disciplinary segregation, and loss of privileges "plainly fall 'within the expected perimeters of the sentence imposed by a court of law,' and do not '[impose] atypical

15

and significant hardship on [petitioner] in relation to the ordinary incidents of prison life'").

In sum, there is clearly "some evidence" to support the finding that Petitioner's conduct violated Code 297 because it circumvented telephone monitoring procedures; accordingly, Petitioner's argument that he was charged under the wrong Code section is without merit. Furthermore, the sanctions imposed upon Petitioner for his violation of Code 297 were within the parameters of the BOP's regulations concerning discipline. Accordingly, Petitioner's arguments are without merit and should be dismissed.

### D. "Progressive Discipline"

Petitioner asserts that the BOP's disciplinary manual "does outline that it's [sic] measures of discipline must be applied in a progressive way." (Docket No. 1 at 6.) He alleges that "[r]epetitive violations for the same prohibited act within a 18 month time spand [sic]–require higher/stiffer severities and penalties." (Id.) In his response, he again asserts that the BOP requires "progressive discipline" and that the lesser prohibited act of Code 397 should have been applied. (Docket No. 22 at 8.)

The BOP's policy concerning inmate discipline is set forth in Program Statement ("PS") 5270.09, Inmate Discipline Program. (Docket No. 31-2 at 2; Docket No. 31-3.) The undersigned has failed to locate the word "progressive" in PS 5270.09. The policy does state that if an inmate commits repetitive prohibited acts, increased sanctions can be imposed. (Docket No. 31-3 at 9, 55.) Therefore, repetitive prohibited acts may result in a change in the sanctions imposed, but not the Code section under which the violation is charged.

In her reasoning for the sanctions imposed, DHO Lohr wrote that "the Bureau of Prisons believes in and practices progressive discipline and future misconduct of this nature will undoubtedly

16

result in harsher sanctions." (Docket No. 15-2 at 13.) However, the undersigned construes the DHO's mention of "progressive discipline" to refer to "harsher sanctions" in accord with PS 5270.09. In any event, the Government correctly notes that this is the third time Petitioner has been charged with prohibited conduct involving the telephone. In 1994, Petitioner admitted to a violation of Code 406, Using the Phone or Mail Without Authorization. (Docket No. 31-4 at 3.) In 2010, Petitioner was found guilty of Code 397, Phone Abuse, for letting another inmate to use his phone. (Id. at 2-3.) Therefore, even though "progressive discipline" is not required by PS 5270.09, it would certainly be warranted based upon Petitioner's disciplinary history.

### E.    *Alleged Racial Bias by the DHO*

Finally, Petitioner alleges that DHO Lohr used racial discrimination to determine "how much disallowance of good conduct time credit that she would sanction against an inmate." (Docket No. 1 at 6.) According to Petitioner, "[w]hite inmates automatically get sanction [sic] with less time credit loses [sic] than black inmates." (Id.) In his response, Petitioner has referenced four (4) inmates whose discipline he believes proves racial discrimination on the part of the DHO. (Docket No. 22 at 8-10; Docket No. 22-6 at 5-6; Docket No. 22-7; Docket No. 22-8.)

To establish an equal protection violation, a petitioner must first "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If the petitioner makes such a showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. "Merely claiming that other prisoners received less severe punishment for the same violation . . . does not create an equal protection claim." Wooten v. Hogsten, No. 6:11-cv-00190, 2012 WL 1598080, at

17

\*6 (E.D. Ky. May 7, 2012); see also Ryan v. Scism, 474 F. App'x 49, 52 (3d Cir. 2012) (dismissing petitioner's equal protection claim where he alleged that two other inmates received a lesser sanction for the same prohibited act, but failed to show that those inmates were similarly situated to him). "Any number of reasons may exist to explain why the other inmate received no punishment at his DHO hearing; he may well have not been guilty of the same offense." Middleton v. Zych, No. 7:12-cv-00266, at \*2 (W.D. Va. Oct. 4, 2012).

Of the four (4) inmates mentioned by Petitioner, two (2) were charged with violations of Code 296, Mail Abuse. (Docket No. 31-2 at 1.) Both received the same disallowance of good conduct time–twenty-seven (27) days–as Petitioner. (Id.) One went before a completely different DHO, Mr. Devereaux. (Id.) A third inmate received the same sanctions as Petitioner for a violation of Code 297, but that inmate also received twenty (20) days of disciplinary segregation, suspended. (Id.) Those three (3) inmates, unlike Petitioner, also had only one (1) charge of mail or phone abuse in their disciplinary records. (Id.) The fourth inmate was found guilty of a violation of Code 297 and received a disallowance of twenty-seven (27) days of good conduct time, ninety (90) days loss of telephone privileges, and ninety (90) days loss of phone, suspended. (Id. at 2.) That inmate also had two (2) prior charges of violating Code 406, Using the Mail or Phone Without Authorization. (Id.)

Based upon these facts, Petitioner has failed to show that he was "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison, 239 F.3d at 654. Furthermore, "[b]ecause the punishment handed down in any case of prisoner misconduct is determined on the basis of the facts of the particular case, the equal protection clause cannot require exact uniformity in degrees of

punishment." Rhodes v. Robinson, 612 F.2d 766, 775 (3d Cir. 1979). Accordingly, Petitioner's claims that his equal protection rights were violated and that the DHO discriminated based upon race are unsupported and should be dismissed.

### V.      Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's motion to dismiss (Docket No. 14) be **GRANTED** and that Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket No. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Plaintiff by certified mail, return receipt requested.

DATED: May 29, 2015

> */s/ John S. Kaull*
> JOHN S. KAULL
> UNITED STATES MAGISTRATE JUDGE