# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**BRYAN KEITH RICHARDSON,**

    Petitioner,

v.                                                   **CIVIL ACTION NO.: 3:14-CV-129**
                                                       **(GROH)**

**CHARLES WILLIAMS,**[1]
**Warden of FCI Gilmer,**

    Respondent.

## MEMORANDUM OPINION AND ORDER
## ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge John S. Kaull. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Kaull for submission of a proposed R&R. Magistrate Judge Kaull issued his R&R, [ECF 43], on May 29, 2015. In the R&R, he recommends that the Petitioner's 28 U.S.C. § 2241 Petition, [ECF 1], be denied and dismissed with prejudice. Magistrate Judge Kaull also recommends that the Respondent's Motion to Dismiss, [ECF 14], be granted.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to conduct a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the

---

[1] The proper respondent for a petition filed under 28 U.S.C. § 2241 is the petitioner's immediate custodian. Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004). Accordingly, the Clerk is **DIRECTED** to substitute Charles Williams, Warden of FCI Gilmer, as the Respondent in this matter, replacing Russell A. Perdue.

factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. Thomas v. Arn, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of *de novo* review and of a petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Objections to Magistrate Judge Kaull's R&R were due within fourteen plus three days of the Petitioner being served with a copy of the same. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Service was accepted at the Federal Correctional Institution, Allenwood, on June 1, 2015,[2] and the Petitioner timely filed his objections.

## I. Background

On February 12, 2010, a district court in the Northern District of California sentenced the Petitioner to a term of 120 months' imprisonment, pursuant to the Petitioner pleading guilty to bank robbery under 18 U.S.C. § 2113(a). The instant petition relates to the Petitioner's use of the prison telephone system while incarcerated at Federal Correctional Institution, Gilmer ("FCI Gilmer"), in Glenville, West Virginia. On July 3, 2014, a special investigate service technician at FCI Gilmer was monitoring recorded inmate phone calls. While monitoring a call that was made on May 21, 2014, the technician heard the Petitioner conversing with his mother and father. At that time, the Petitioner was not supposed to be on the phone, as he had lost his phone privileges due to an unrelated infraction. It appeared to the technician that the Petitioner was able to speak to his parents on the May 21 phone call by using another inmate's personal access code ("PAC"). It is a violation of

---

[2] At the time the Petitioner filed his petition, he was incarcerated at FCI Gilmer in Glenville, West Virginia. Accordingly, this Court has proper jurisdiction over his 28 U.S.C. § 2241 petition.

2

BOP policy for inmates to share a PAC number, which can allow one inmate to speak on another inmate's phone call. During the afternoon of July 3, 2014, prison staff delivered to the Petitioner an incident report concerning the violation the technician noticed during the recorded phone call. The next day, the Petitioner completed and signed a "Notice of Discipline Hearing Before the DHO" form. He indicated that he wished to have a staff representative assigned to him to assist in his defense during a prison disciplinary hearing. He further indicated that he did not wish to call any witnesses at the hearing.

A disciplinary hearing relating to the infraction was held on July 24, 2014, before Disciplinary Hearing Officer ("DHO") Debbie J. Lohr. At the hearing, the Petitioner was joined by his requested staff representative, unit manager David McAdams. During his DHO hearing, the Petitioner acknowledged that the factual allegations concerning his unauthorized use of the telephone were true, but he contested the applicability of the BOP Inmate Discipline Program Code that he was alleged to have violated. The Petitioner was charged with violating Code 297, which provides in part that inmates are prohibited from using the telephone for "abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called." The Petitioner argued that his offense was not punishable under Code 297, a "high severity level prohibited act," but instead was covered under Code 397, a "moderate severity level prohibited act" which is nearly identical to Code 297 but applies to use of the telephone for abuses which *do not* circumvent the ability of staff to monitor telephone use.[3]

The Petitioner's primary argument was then and is now that his conduct in using

---

[3] The Petitioner argued that Code 497 would be the most appropriate violation, but he was informed that Code 497 no longer exists.

another inmate's PAC to speak on the phone did not circumvent the BOP's monitoring procedures. DHO Lohr disagreed, finding that the Petitioner violated Code 297 and stating in her decision that conduct "such as three way calling, passing messages over the telephone, or sharing a PAC number by talking on another inmate's telephone call violates Code 297 of the Discipline policy." As punishment, DHO Lohr disallowed twenty-seven days "good conduct time," and imposed a six-month loss of telephone privileges, with three months suspended for 180 days "pending clear conduct." The Petitioner appealed DHO Lohr's decision to the regional director for the mid-Atlantic region. His appeal was denied on September 30, 2014.[4]

---

[4] The decision issued by the regional director appears to contain an error. For the most part, the text of the regional director's decision is consistent with the facts of the Petitioner's appeal. However, one sentence in the decision provides that the reporting officer stated the Petitioner used the Petitioner's telephone account "to pass messages through the person [the Petitioner] initially called to an unknown person at an unknown number." In an order for supplemental response, Magistrate Judge Kaull ordered the Respondent to address with particularity this inconsistency, among others, as "[t]he DHO report contains no such finding nor does the incident report contain any such allegation." The Respondent failed to address the regional director's decision in his supplemental response. Subsequently, while the Petitioner did not object to the portion of the magistrate judge's R&R which discusses the procedural history of the Petitioner's appeal and his exhaustion of administrative remedies, the Petitioner appended a copy of the regional director's decision as an exhibit to his objections. On the cover page provided with the exhibit, the Petitioner argued that Magistrate Judge Kaull utilized the "false regional appeal" to find that the Petitioner was charged with three-way calling.

This Court finds that the error in the regional director's decision constitutes harmless error and that the regional director's denial of the Petitioner's appeal does not represent an abuse of discretion. Throughout the instant proceedings, the Petitioner has raised the same argument–that his offense was improperly charged as a Code 297 violation instead of a Code 397 violation. To that end, the regional director wrote to the Petitioner, "You claim you were inappropriately charged, and stated that your behavior did not circumvent telephone monitoring procedures. . . . It is noted you do not appeal the finding of the DHO that you engaged in the behavior depicted in Section 11 of the incident report." The remainder of the regional director's decision is similarly consistent with the facts of the Petitioner's case, excepting the peculiar statement erroneously attributed to the reporting officer. Had the regional director summarized the facts correctly, there is no indication the outcome of the Petitioner's appeal would have been any different. The Petitioner's § 2241 petition was reviewed by Magistrate Judge Kaull who, upon consideration of the entire record–which included multiple copies of the Petitioner's administrative appeals documents–found that the Petitioner's § 2241 petition was without merit. Now, in his objections filed with this Court, the Petitioner argues that Magistrate Judge Kaull utilized the "false regional appeal" decision to find that the Petitioner was improperly charged with three-way calling instead of using another's inmate's PAC. However, there is no indication that the magistrate judge so found. In the R&R, Magistrate Judge Kaull referenced certain district court decisions that addressed legal issues similar to those presented in the instant case but which concerned inmates who were charged with

The Petitioner filed the instant § 2241 petition on December 1, 2014. He alleged that certain prison officials, including DHO Lohr, acted in violation of BOP policy and the U.S. Constitution in finding that the Petitioner violated Code 297 instead of Code 397. He further argued that McAdams failed to fulfill his duties as the Petitioner's staff representative, that DHO Lohr was racially biased and that his punishment under Code 297 was inconsistent with the BOP's "progressive discipline" system.[5]

On January 21, 2015, the Respondent filed a motion to dismiss the petition, to which the Petitioner file a traverse on February 23, 2015. Upon review, Magistrate Judge Kaull ordered the Respondent to file a supplemental response to address certain inconsistencies and issues raised by the parties. The Respondent filed a supplemental response on April 2, 2015. The Petitioner filed a traverse to the supplemental response on April 17, 2015. The Respondent filed an addendum to the supplemental response on April 23, 2015. Magistrate Judge Kaull issued his R&R on May 29, 2015, and the Petitioner timely filed his objections. This matter is now ripe for this Court's review.

## II. Standard of Review

Federal Rule of Civil Procedure 12 states that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P.

---

three-way calling. These citations might account for the Petitioner's confusion, but there is no indication that the regional director's error had an adverse effect on the Petitioner's chances of success.

[5] In several filings, the Petitioner alleged that the Respondent intentionally limited the Petitioner's access to the prison law library. In his objections to the R&R, while he continues to reference his lack of access to the library, the Petitioner does not specifically object to Magistrate Judge Kaull's summary of the facts or his analysis on this issue. The Court has reviewed the R&R's conclusions as to this aspect of the Petitioner's case, and finds no error.

5

12(d). However, the Court may consider documents attached to the complaint, as well as those attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). But a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

A complaint that offers "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (citation and internal quotation marks omitted). Likewise, a complaint that tenders only "naked assertion[s] devoid of further factual enhancement," does not suffice. Id. (alteration in original) (citation and internal quotation marks omitted). A party is required to articulate facts that, when accepted as

true, "show" he is plausibly entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

### III. Discussion

The Petitioner's objections are presented as a paragraph-by-paragraph response to the magistrate judge's R&R. Interspersed among his specific objections and arguments, the Petitioner admits or denotes as true certain portions of the R&R, while others he explicitly denies. Upon careful consideration of the record, the parties' filings and the R&R, the Court finds that Magistrate Judge Kaull committed no clear error with regard to those portions of the R&R that the Petitioner does not object to. This Court will review *de novo* the Petitioner's arguments as to the alleged violations of his due process rights and his right to a staff representative, the racial bias allegedly exhibited by DHO Lohr, the BOP's policy of "progressive discipline," and the applicability of Code 297 to his violation.

#### A.  Procedural Due Process and Right to a Staff Representative

The Petitioner's arguments that he was deprived of his procedural due process rights during the disciplinary process are without merit. In the R&R, Magistrate Judge Kaull found that the requirements for prison disciplinary proceedings, as articulated in Wolff v. McDonnell, 418 U.S. 539, 559-67 (1974), had been met. Additionally, the magistrate judge found that DHO Lohr's decision to revoke twenty-seven days of the Petitioner's good conduct time was supported by "some evidence." See Superintendent, Mass. Corr. Inst.

7

at Walpole v. Hill, 472 U.S. 445, 454 (1985). In his objections, the Petitioner's procedural due process arguments are tied together with his contention that the assistance of his staff representative, McAdams, was entirely insufficient.

While prisoners retain rights under the Due Process Clause of the U.S. Constitution during their incarceration, prison disciplinary proceedings are not considered to be part of a criminal prosecution. Wolff, 418 U.S. at 556. Accordingly, the "full panoply of rights" that a defendant is owed during a criminal prosecution does not apply to prison disciplinary proceedings. Id. ("In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."). However, prisoners are entitled to some protections under the Due Process Clause. In Wolff, the Supreme Court held that when, as here, a prison disciplinary proceeding may result in the loss of good time credit, due process requires the following:

> (1) written notice of the charges at least 24 hours prior to a hearing on the charges; (2) the right to call witnesses and present evidence in his or her defense, so long as doing so would not be an undue hazard to institutional safety or correctional goals; (3) the right to seek the aid of another prisoner or, if that is forbidden, help from a staff member if the prisoner is illiterate or the issue is so complex that it is not likely that the prisoner can collect and present the necessary evidence for an adequate comprehension of the case; (4) impartial fact-finders; and (5) a written statement by the fact-finder(s) explaining the evidence on which a disciplinary decision is made and the reasons for the disciplinary action.

Boston v. Perdue, Civil Action No. 2:12-CV-75, 2013 WL 1503165, at *5 (N.D.W. Va. Apr. 11, 2013) (alteration in original) (citing Wolff, 418 U.S. at 564-71).

The Petitioner's objections do not seriously challenge the first, second or fifth Wolff requirements, as identified above. As to the first requirement, concerning twenty-four hour notice of charges prior to the hearing, there is sufficient evidence in the record to

demonstrate that the Petitioner received notice of his violation of the prison's phone policy on July 3, 2014, and that he received a "Notice of Discipline Hearing Before the DHO" the next day. The DHO hearing was held three weeks later, on July 24, 2014. As to the second requirement, concerning the right to call witnesses and present evidence, on July 4, 2014, the Petitioner completed and signed a "Notice of Discipline Hearing Before the DHO" form, on which a check mark was placed in the space indicating that the Petitioner did not wish to call witnesses at the hearing. It appears that the Petitioner did not present documentary evidence in his defense at the hearing. As McAdams stated in a declaration submitted by the Respondent, the Petitioner intended to "tell the truth and ask for leniency" at the DHO hearing. Throughout the disciplinary process, the Petitioner admitted to committing a violation of the phone policy. His primary argument, asserted with consistency at each stage of the proceedings, was that Code 297 was inapplicable to his offense. As to the fifth requirement, concerning a written statement by the fact-finder explaining the basis for the disciplinary decision, a copy of the DHO's report was delivered to the Petitioner on August 7, 2014. The four-page report detailed the charges against the Petitioner. The report also contained a summary of the Petitioner's statements at the hearing, which included his admission that the charges against him were true but that he did not circumvent monitoring procedures under Code 297. The DHO's report concluded that the act was committed as charged, pursuant to a finding that "the greater weight of the evidence supports that your conduct is a violation of prohibited act Code 297."

The Petitioner's most vociferous objection under the Due Process Clause goes to the alleged inadequacy of his staff representative, McAdams. It is well-established that "inmates do not have a right to counsel in prison disciplinary proceedings." <u>Watters v. Ray</u>,

175 F. App'x 212, 214 (10th Cir. 2006) (unpublished) (citing Baxter v. Palmigiano, 425 U.S. 308, 315 (1976); Wolff, 418 U.S. at 570); see also Barry v. Whalen, 796 F. Supp. 885, 895 (E.D. Va. 1992) ("The Supreme Court has unambiguously held that an inmate possesses no right to either retained or appointed counsel in prison disciplinary hearings . . . .") (citing Wolff, 418 U.S. at 570; Baxter, 425 U.S. at 314-15). Pursuant to the Wolff requirements, an inmate has a constitutional right to seek the aid of a staff member to assist in the prison disciplinary process when the inmate is illiterate or where "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." 418 U.S. at 570. Here, there is no evidence that the Petitioner was illiterate or that his arguments regarding the differences between Code 297 and Code 397 were so complex that counsel would have been necessary for an adequate comprehension of the case.

In alleging that McAdams failed to fulfill his duties as the Petitioner's staff representative, the Petitioner points to a BOP "Duties of Staff Representative" form, which McAdams signed on July 7, 2014. That form enumerates nine specific duties a staff representative should perform, including presenting favorable information and evidence, and helping to prepare the inmate's defense. Upon review of the record, there is no indication that McAdams failed to perform his duties. The Petitioner elected not to call witnesses or to present evidence at his hearing; choices perhaps related to his decision to admit that he committed the acts described in the incident report. McAdams met with the Petitioner immediately before the DHO hearing and on another occasion at least one day before the hearing. During each meeting, the Petitioner admitted to breaking the prison's telephone rules by speaking on the phone while using another inmate's PAC. The

10

DHO's discussion in her report plainly demonstrates that she understood the Petitioner's argument that Code 297 was inapplicable to his defense. "[T]he DHO discussed with you at length the difference between 297 and 397 and gave you examples of each," the report provided, and "[t]he DHO explained that any conduct such as . . . sharing a PAC number by talking on another inmate's telephone call violates Code 297 of the Discipline policy." McAdams' alleged deficiencies as a staff representative did not amount to a violation of the Petitioner's due process rights, because the Petitioner had no constitutional right to counsel during his disciplinary proceeding. See Payne v. Craig, Civil Action No. 5:08-CV-00989, 2011 WL 4021320, at *4 (S.D.W. Va. Sept. 9, 2011) ("[W]ith respect to Petitioner's contention that his staff representative was ineffective, the Court finds that Petitioner's due process rights were not violated by the quality of his representation since he does not have a constitutional right to assistance of counsel during the disciplinary processes."). Furthermore, the record is devoid of any credible indication that McAdams failed to provide adequate representation to the Petitioner pursuant to BOP policy, and there is no evidence that any alleged failure on McAdams' part could have prejudiced the Petitioner, who admitted committing the charged offense and whose only argument was plainly comprehended and rejected by the DHO.

In his § 2241 petition, the Petitioner argued that his disciplinary hearing was not adjudicated by an impartial fact finder and, to the contrary, that DHO Lohr was racially biased. The Court finds that there is no merit to the Petitioner's allegation of racial discrimination in violation of the Equal Protection Clause, which will be addressed in more detail below. Because the Petitioner's procedural due process rights, as articulated in Wolff, 418 U.S. 559-67, were not violated during the prison disciplinary process, and as

11

there is "some evidence" supporting the disciplinary decision, Hill, 472 U.S. at 454, the Petitioner's objections on this issue are **OVERRULED**.

B.     The DHO's Alleged Bias

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Here, the Petitioner argues that DHO Lohr found the Petitioner to be in violation of Code 297–and accordingly imposed a punishment that included the loss of twenty-seven days of good conduct time–because she was racially biased against the Petitioner, who is black. In an attempt to support his allegations of racial discrimination, the Petitioner's traverse to the motion to dismiss contained references to four other inmates whose disciplinary records allegedly establish that DHO Lohr was biased and that the Petitioner was treated differently due to his race. In response to these allegations, the Respondent filed an affidavit executed by Sarah Lilly, Legal Assistant for the Beckley Consolidated Legal Center. Lilly reviewed and summarized information found in the BOP's SENTRY computer database, including the disciplinary records of the four inmates the Petitioner referenced. Upon reviewing this evidence, Magistrate Judge Kaull found that the Petitioner's vague allegations of equal protection violations were without support and warranted dismissal. Specifically, Magistrate Judge Kaull found that the Petitioner failed to demonstrate that he was treated differently from other similarly situated inmates.

Now, in his objections to the R&R, the Petitioner argues that both the Respondent

and Magistrate Judge Kaull have failed to "'specifically' identify whether inmate #1, #2, #3, or #4 is Black or White!" and he further asserts that his claims were "not researched properly, so as to hide the truth." Of the four inmates the Petitioner referenced in his traverse, one was white.[6] Two of the four inmates he referenced, including the white inmate, were charged with violations of Code 296, Mail Abuse, instead of Code 297. The Petitioner alleges that the white inmate was sanctioned with a loss of fourteen days of good conduct time, while the inmate that the Petitioner identifies as black was, like the Petitioner, sanctioned with a loss of twenty-seven days of good conduct time. However, the black inmate was not disciplined by DHO Lohr, but by a different DHO. A third inmate, identified as black and as being charged with violating Code 297, received the same punishment as the Petitioner, but with an additional twenty days of disciplinary segregation suspended. According to Lilly, each of those three inmates had only one charge of phone or mail abuse in his disciplinary record. (The Petitioner's Code 297 infraction represented his third phone or mail-related violation.) A fourth inmate with two prior charges of unauthorized phone or mail use, also identified as black, received the same punishment as the Petitioner for a violation of Code 297.

Stated plainly, the Petitioner has failed to demonstrate that he was similarly situated to other inmates and that he was treated differently from those inmates because of race. Only after an inmate has made such a showing can a court proceed to determine whether an alleged disparity in treatment could be justified under the requisite level of scrutiny. See

---

[6] The Petitioner identified each of the four inmates by race. A review of the BOP's online "Inmate Locator" confirms, to the best of this Court's ability, the Petitioner's identifications. The Petitioner also referenced two other "non-black inmates," by last name only. No other information about these two inmates is available. The Court has attempted to reconcile the Petitioner's allegations with the details found in Lilly's affidavit, in order to provide a summary of the four identifiable inmates' respective disciplinary records.

Middleton v. Zych, Civil Action No. 7:12-CV-00266, 2012 WL 4742777, at *2 (W.D. Va. Oct. 4, 2012) (citing Morrison, 239 F.3d at 654), aff'd per curiam, 514 F. App'x 401 (4th Cir. 2013)). The magistrate judge determined that the Petitioner failed to make such a showing. This Court reaches the same conclusion. The Petitioner's objections on this issue are **OVERRULED**.

  **C. The BOP's "Progressive Discipline"**

In filings submitted before Magistrate Judge Kaull issued the R&R, the Petitioner argued that the BOP had applied Code 297 in violation of its own policy of "progressive discipline." As the magistrate judge noted, the word "progressive" does not appear in the BOP Program Statement concerning inmate discipline. The Petitioner's confusion apparently stemmed from DHO Lohr's admonition in her decision that subsequent violations on the Petitioner's part would lead to harsher sanctions, because "the Bureau of Prisons believes in and practices progressive discipline." When articulating these facts in the R&R, Magistrate Judge Kaull referenced the Petitioner's disciplinary record, which included two prior violations, as a way of demonstrating that even if the BOP was prohibited from implementing punishment under Code 297 absent prior violations, such punishment would still have been warranted in the Petitioner's case. Now, the Petitioner objects to Magistrate Judge Kaull's reference to these two prior violations, as one of the violations occurred in 1994 and concerned unauthorized use of the mail. This objection strays too far afield from any relevant aspect of the Petitioner's § 2241 petition. It was not error for the magistrate judge to reference the Petitioner's disciplinary record. Furthermore, the Petitioner's claims concerning the BOP's policy of "progressive discipline" are

irrelevant, and his corresponding objections are **OVERRULED**.

### D. Applicability of Code 297

As discussed above, Code 297, a "high severity level prohibited act," is very similar to Code 397, which is a "moderate severity level prohibited act." The key distinction between the two provisions is that in order to be guilty of a violation of Code 297, an inmate's use of the telephone must have circumvented "the ability of staff to monitor frequency of telephone use, content of the call, or the number called," while a Code 397 violation does not require circumvention.

The Petitioner objects to Magistrate Judge Kaull's determination that there is "clearly 'some evidence' to support the finding that Petitioner's conduct violated Code 297 because it circumvented telephone monitoring procedures." The Petitioner contends that using another inmate's PAC to place a phone call or speaking on another inmate's call does not circumvent the ability of staff to monitor the details of a phone call. He further argues that the DHO's determination in the instant case conflicts with the manner in which the BOP has disciplined the Petitioner in the past. Specifically, he avers that his punishment in 2014 is at odds with punishment he received in 2010, when he was charged with a violation stemming from similar conduct but his offense was deemed to be a violation of Code 397, not Code 297.

The Petitioner has cited no authority for the proposition that, when an inmate is charged with conduct similar to that of a past offense, a DHO must impose the same punishment for each successive violation. A reporting officer exercises discretion when determining which code to assign to a violation of the BOP's discipline policy. See Morris

v. Fransic, Civil Action No. 3:06-CV-26, 2007 WL 2327111, at *1 (N.D.W. Va. Aug. 10, 2007), aff'd per curiam, 261 F. App'x 542 (4th Cir. 2008). Likewise, a DHO is entitled to exercise discretion, based upon the evidence presented, when determining whether a violation has occurred. See Forbes v. Caraway, Civil Action No. DKC-12-2215, 2013 WL 1742141, at *4 n.2 (D. Md. Apr. 22, 2013). In the Petitioner's case, DHO Lohr acted within her discretion in concurring with the reporting officer and determining that the Petitioner's conduct circumvented prison staff's monitoring procedures and therefore violated Code 297. The DHO's decision was not arbitrary or capricious, regardless of the result of the Petitioner's prior disciplinary hearings. Other courts have found that the use of another inmate's PAC number can serve as the basis for finding a violation of Code 297. See Mehta v. O'Brien, Civil Action No. 1:10-CV-200, 2011 WL 1790440, at *6 (N.D.W. Va. Mar. 29, 2011) (finding that, where an inmate admitted to using another inmate's PAC to place a telephone call, "the findings made by the DHO are sufficient to support the finding that the petitioner violated Prohibited Act Code 297"), adopted by 2011 WL 1807367 (N.D.W. Va. May 10, 2011); see also Ames v. Ebbert, Civil Action No. 3:12-CV-0405, 2012 WL 4867380, at *5 (M.D. Pa. July 2, 2012) ("[T]he DHO made it clear that he found the petitioner guilty of a Code 297 violation for using another inmate's account to make calls. Use of another inmate's account to make calls falls within the scope of the current version of Code 297."), adopted by 2012 WL 4867374 (M.D. Pa. Oct. 12, 2012).

DHO Lohr articulated the rationale behind her decision in the report she prepared following the Petitioner's hearing. She explained to the Petitioner that "while incarcerated at [FCI Gilmer], . . . you were identified as the inmate talking during a call placed . . . on the PAC number of [another inmate]. . . . Sharing PAC numbers is strictly prohibited conduct

as it circumvents telephone monitoring procedures." Elsewhere in the report, DHO Lohr discussed the Petitioner's argument that his conduct was a violation of Code 397, not Code 297, stating that the Petitioner failed to present "any evidence convincing the DHO that is true. In fact, the DHO discussed with you at length the difference between 297 and 397 and gave you examples of each." DHO Lohr again stated that conduct such as "sharing a PAC number by talking on another inmate's telephone call" is a violation of Code 297. Accordingly, as the Petitioner admitted to using another inmate's PAC number to talk on the phone, DHO Lohr imposed an appropriate punishment. Upon concluding a *de novo* review of the record and the parties' arguments, this Court finds that it is clear the DHO's decision was supported by "some evidence," and therefore the Petitioner's argument that he should not have been punished for violating Code 297 is without merit.

Taking an alternative tack in his objections to other portions of the R&R, the Petitioner argues that the magistrate judge mistakenly construed his violation as being one for "three-way calling" instead of sharing another inmate's PAC number. He avers that the magistrate judge "has gotten confused about the petitioner[']s 'charged' offense conduct!" Here, it is the Petitioner's confusion that must be addressed. His confusion likely stems from the magistrate judge's reference to certain cases that present similar legal issues but with slightly different factual scenarios, some including charges of three-way calling. The magistrate judge never implied that the Petitioner was charged with three-way calling and the Petitioner's arguments on this point do not warrant further consideration. As provided above, the Court has reviewed the DHO's decision and finds that there is at least some evidence to support her finding that the Petitioner violated Code 297. The Petitioner's objections on this issue are **OVERRULED**.

## IV. Conclusion

Accordingly, it is the opinion of this Court that Magistrate Judge Kaull's Report and Recommendation, [ECF 43], should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated therein. The Petitioner's objections are **OVERRULED**. The Court **ORDERS** that the Petitioner's § 2241 petition, [ECF 1], is hereby **DISMISSED WITH PREJUDICE**. The Court further **ORDERS** that the Respondent's Motion to Dismiss, [ECF 14], is **GRANTED**. This matter is **ORDERED STRICKEN** from the active docket of this Court.

The Clerk is **DIRECTED** to substitute Charles Williams, Warden of FCI Gilmer, as the Respondent in this matter. The Clerk is further **DIRECTED** to enter a separate order of judgment in favor of the Respondent, pursuant to Federal Rule of Civil Procedure 58.

As the Petitioner is a federal prisoner seeking relief through a § 2241 petition, the Court makes no certificate of appealability determination in this matter.

The Clerk is directed to transmit copies of this Order to all counsel of record and to mail a copy to the *pro se* Petitioner by certified mail, return receipt requested, at his last known address as shown on the docket sheet.

**DATED:** June 26, 2015

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE